## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| REGINALD CUTTINO MELVIN, | ) | |
| | ) | |
| Petitioner, | ) | **MEMORANDUM OPINION** |
| | ) | **AND RECOMMENDATION** |
| v. | ) | |
| | ) | |
| UNITED STATES OF AMERICA, | ) | 1:09CV660 |
| | ) | 1:02CR201-1 |
| Respondent. | ) | |

Petitioner Reginald Cuttino Melvin, a federal prisoner, has filed a motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 (docket no. 144).[1] The history of Petitioner's case in this court is a long and winding one. Petitioner was indicted, quite simply enough, on a single count of possession of a firearm by a convicted felon in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2) (docket no. 1). He pled guilty to that charge (docket nos. 11, 12) and was sentenced to 57 months of imprisonment, 3 years of supervised release, a special assessment of $100, and a fine of $25,000 (docket no. 20). Petitioner did not file a direct appeal, but did file a motion under Section 2255 (docket no. 34). That motion was granted with respect to Petitioner's claim that counsel provided ineffective assistance of counsel by not filing a notice of appeal. His other claims were denied without prejudice to him reraising them in a new 2255 motion following any direct appeal (docket no. 53).

---

[1] This and all further cites to the record are to the criminal case.

Petitioner did pursue a direct appeal. While the appeal was pending, Petitioner filed what was labeled as a motion under FED. R. CIV. P. 60(b) (docket no. 66). That motion was construed as a motion under Section 2255 and dismissed without prejudice to Petitioner filing a 2255 motion after his appeal was completed (docket nos. 67, 87). As it turned out, Petitioner's appeal resulted in his conviction and sentence being affirmed in part, vacated in part, and remanded for resentencing (docket nos. 81, 82). At resentencing, Petitioner was sentenced to 61 months of imprisonment, 3 years of supervised release, a special assessment of $100, and a fine of $25,000 (docket no. 105).

Petitioner next pursued a second direct appeal in which he argued that his fine was improper. This time, his conviction and sentence were affirmed (docket nos. 134, 135). Petitioner did then file a new motion under 2255 (docket no. 142). That motion was procedurally deficient, but Petitioner filed a corrected motion (docket no. 144). The corrected motion claimed that Petitioner received ineffective assistance of counsel and that the sentencing judge committed several errors. Respondent filed a response (docket no. 153), Petitioner filed a reply (docket no. 155), and the matter was referred to the undersigned. After reviewing the parties' briefs and the record, the undersigned determined that an evidentiary hearing was necessary on certain issues. Counsel was appointed and the hearing was held on October 21, 2010. The case is now ready for a decision on Petitioner's pending 2255 motion.

**DISCUSSION**

**Claim One**

Petitioner's first claim for relief argues that he received ineffective assistance of counsel because his attorney failed to "object to [an] incorrect application of the U.S. Sentencing [G]uidelines" (docket no. 144 at 5). In an accompanying memorandum, he explains that he believes that he received ineffective assistance because counsel at his resentencing did not object to the use of a conviction that occurred after his sentencing, but before his resentencing, to calculate his criminal history at the resentencing. In order to prove ineffective assistance of counsel, a petitioner must establish, first, that his attorney's performance fell below a reasonable standard for defense attorneys and, second, that he was prejudiced by this performance. *See Strickland v. Washington*, 466 U.S. 668 (1984). Petitioner is not entitled to a hearing based upon unsupported, conclusory allegations. *See Nickerson v. Lee*, 971 F.2d 1125, 1136 (4th Cir. 1992) (in order to obtain an evidentiary hearing, a habeas petitioner must come forward with some evidence that the claim might have merit), *abrog'n on other grounds recog'd, Yeatts v. Angelone*, 166 F.3d 255 (4th Cir. 1999). A petitioner bears the burden of affirmatively showing deficient performance. *See Spencer v. Murray*, 18 F.3d 229, 233 (4th Cir. 1994). To establish prejudice, Petitioner must show that there is a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 694.

Here, Petitioner cannot show error or prejudice. In all, three resentencing hearings were held. At the first two, counsel contested the use of the later conviction and various cases were discussed (docket no. 103 at 7-9; docket no. 104). At the third, after a thorough discussion of the matter and review of the applicable case law, counsel finally conceded the point under Fourth Circuit case law (docket no. 110 at 2-5). Petitioner has not explained why this concession was not reasonable following counsel's review of the issues. Nor has he explained how he was prejudiced given the state of the law as it existed. That is, he has not shown that counsel could have won the issue by continuing to contest it. Petitioner's first claim for relief should be denied.

## Claim Two

Petitioner's second claim is that his attorney at his resentencing did not present all of the relevant evidence that he should have presented concerning Petitioner's continuing ability to pay the fine that had been imposed at his first sentencing. This issue was the subject of a great deal of testimony at Petitioner's evidentiary hearing on his 2255 motion. Petitioner testified generally at the hearing that, while he was in prison between his original sentencing and his resentencing, a law student who he left in charge of his assets stole a majority of them. This issue was raised at Petitioner's resentencing and Petitioner gave similar testimony at that time. Petitioner concedes that his attorney did litigate this issue at resentencing. Nevertheless, he faults his attorney for failing to present witness testimony from

Kelletra Dean, who succeeded the law student in handling Petitioner's affairs, and documentary evidence that would have supported his testimony concerning his changed financial circumstances.

Petitioner's attorney testified at the evidentiary hearing that he was aware of Dean's existence and that he was "pretty sure [he] would have talked to her" by telephone (docket no. 168 at 79). Nevertheless, he did not call her as a witness for two reasons: One was that the government did not put on evidence to contest the fact that some of Petitioner's assets had been stolen; the second was that, even if the assets had been stolen, Petitioner's own testimony at the time was that he still possessed unencumbered assets worth over $125,000 (*id.* at 43-44, 81). This was far more than the amount needed to pay a $25,000 fine. Therefore, rather than present testimony or evidence showing that a portion of Petitioner's assets had been stolen when he still had more than enough assets to pay the fine, Petitioner's attorney chose to spend his time arguing more important aspects of the resentencing hearing, such as the amount of prison time Petitioner was facing. This was because there was a possibility that Petitioner could have had his time increased at resentencing so that he would have spent even more time in prison. Counsel sought to prevent that (*id.* 83-86).

Viewed in context, counsel's decision not to further contest the question of Petitioner's assets is certainly understandable as a strategic decision. This court cannot lightly second-guess such decisions in deciding an ineffective assistance of

counsel claim. *Strickland*, 466 U.S. at 689. Moreover, Petitioner has not demonstrated prejudice from the decision. As already noted, he possessed ample assets to pay the $25,000 fine that had been imposed at the original sentencing. There was no reasonable chance that, even had additional evidence been presented, the amount of the fine would have been lowered. Therefore, Petitioner has demonstrated neither the error nor the prejudice necessary to prevail on this claim. His second claim for relief should be denied.[2]

### Claim Three

Petitioner's third claim for relief alleges that his attorney did not raise meritorious issues on appeal and did not keep him properly advised of case developments. The only possible issue that he specifically sets out in his supporting memorandum was his ability to pay the fine; however, that issue was raised and rejected on appeal (docket no. 134). Any allegation that there were other issues is entirely conclusory.

Petitioner also claims that his attorney did not inform him that his second appeal had been denied and that, due to this failure to inform, he missed his chance to file a petition for certiorari with the United States Supreme Court. Counsel stated at the evidentiary hearing in this matter that he did not have any recollection as to

---

[2] Petitioner also claims that he was harmed by the lack of additional evidence at his resentencing because the sentencing judge commented that he did not find Petitioner's testimony to be credible. To a great extent, those comments involved other testimony (docket no. 110 at 13-15, 18-19). Furthermore, in imposing the fine, the judge specifically stated that "the Court finds that Mr. Melvin still has assets to pay that" (*id.* at 19). This was true no matter how much was or was not stolen from Petitioner.

whether or not he advised Petitioner of his right to petition for certiorari. Therefore, for the purposes of the hearing, the government conceded that he did not (docket no. 168 at 76). Nevertheless, the government did present a legal argument at the end of hearing based on case law. *See Carter v. United States*, Nos. 3:09cv14, 3:05cr82, 2010 WL 3619252 (W.D.N.C. Sept. 10, 2010).

In *Carter*, a Petitioner brought a 2255 motion alleging that his attorney mishandled his appeal by failing to file a petition for certiorari. After concluding that the attorney had indeed mishandled the matter, the court noted that the proper remedy lay not with the trial court, but at the appellate level. Therefore, it denied his 2255 motion without prejudice to the petitioner filing a motion to recall the mandate in the Court of Appeals for the Fourth Circuit. *Id.* at *6. This court finds *Carter* persuasive and will act in the same manner.

## Claim Four

Petitioner's next claim is that his attorney did not file a motion to suppress the firearm involved in his case prior to Petitioner entering his guilty plea. Before discussing the merits of this allegation, the court notes two things. First, it is not clear whether Petitioner intends to go forward with his claim. The remedy would be to vacate his conviction, allow him to withdraw his plea, and then have him file a motion to suppress. If unsuccessful, he would then have to go to trial; and, if convicted, be resentenced. It is possible that his sentence could be harsher than the one imposed at resentencing. It does not appear that Petitioner wants this outcome.

At the evidentiary hearing, the only specific relief requested by his attorney was resentencing on the amount of his fine (docket no. 168 at 108). When asked about whether he wanted to start the case anew and contest the charges, Petitioner himself was equivocal (*id.* at 31-32, 34-35).

Second, assuming that Petitioner does want to proceed with this claim, in order to show prejudice and prevail, he would need to establish that there is a reasonable probability that but for counsel's allegedly deficient conduct, he would not have pled guilty but would have gone to trial. *Hill v. Lockhart*, 474 U.S. 52 (1985). The court must determine whether "a decision to reject the plea bargain would have been rational under the circumstances." *Padilla v. Kentucky*, 130 S. Ct. 1473, 1485 (2010) (citing *Roe v. Flores-Ortega*, 528 U.S. 470, 480, 486 (2000)). This determination is an objective one which is "dependent on the likely outcome of a trial had the defendant not pleaded guilty." *Meyer v. Branker*, 506 F.3d 358, 369 (4th Cir. 2007). The key to evaluating whether a reasonable defendant would have rejected the plea offer to pursue a suppression motion in this case is largely dependant on the likely outcome of the suppression motion. In short, no reasonable defendant would reject a plea offer to pursue a fruitless motion.

The basic facts of Petitioner's case, according to the factual basis supporting his guilty plea (docket no. 12), are that he was stopped for speeding by Officer Harry Bennett of the Durham Police Department on May 8, 2002. Petitioner did not remain in the car as requested by Officer Bennett, but instead got out and became verbally

combative. He also provided the officer with a drivers license in the name of Reginald Christopher Melvin. Officer Bennett took the license and remembered that "Reginald Melvin" had outstanding warrants against him; however, a warrant check produced no active warrants. Officer Bennett returned to Petitioner's car and asked if he had any drugs, alcohol, or weapons in the car. Petitioner responded that there was a firearm on the dashboard. Officer Bennett saw a Beretta 9-mm semiautomatic pistol on the dashboard and a 15-round ammunition clip on the passenger seat. When Petitioner was asked to move away from the car, he again became combative. He was arrested for resist, delay and obstruct.

Officer Bennett later learned that Petitioner's true name was Reginald Cuttino Melvin and that he was a convicted felon. Petitioner was eventually charged in state court with speeding, resisting arrest, providing a fictitious drivers license, and being a  felon in possession of a firearm. He was later also indicted in this court.

Petitioner claims that his attorney should have filed a suppression motion based on the theory that Officer Bennett could not possibly have seen him speeding in order to make the initial traffic stop that led to the discovery of the firearm and Petitioner's indictment. In support of that contention, he testified at the evidentiary hearing in this matter that Officer Bennett claimed to have tracked his speed by "pacing" him, i.e. following Petitioner and reading his own speedometer. Petitioner maintained that the route over which Officer Bennett followed him has limited sight distance, a lot of curves, and no street lights in parts so that Officer Bennett could

not possibly have paced him to tell that he was speeding (docket no. 168 at 27). Petitioner also claimed that he knew Officer Bennett was behind him; and, therefore, he would not have been speeding (*id.* at 28). Petitioner stated that he believed that an officer needed half a mile to a mile to pace another car to determine its speed (*id.* at 28, 59-60).

Contrary to Petitioner's testimony, Officer Bennett testified at the evidentiary hearing that he observed Petitioner's vehicle make a turn and take off at a "high rate of speed" (*id.* at 91). He followed Petitioner, paced him on two straight stretches of road totaling several tenths of a mile in length, and concluded based upon his observations and his training in speed estimation that Petitioner was traveling at 52 miles per hour in a 35 mile per hour zone. In pacing Petitioner, the officer "locked" onto him and observed his own speedometer (*id.* at 92-94). Officer Bennett then pulled Petitioner over for speeding.

To succeed with a motion to suppress, Petitioner's attorney would have had to overcome the testimony of Officer Bennett who, presumably, would have testified at any suppression hearing just as he testified at the evidentiary hearing. That testimony would have been exceedingly difficult to overcome. Petitioner offered only his opinion that the sections of road that they traveled were not straight enough for an officer to accurately pace him. Nevertheless, he was not in Officer Bennett's vehicle on the night of the stop and could not say with certainty what Bennett could or could not observe and whether Bennett did have a chance to "lock onto" him and

observe his speed.  He also offered only his lay opinion that up to a mile was needed to perform pacing of a vehicle.  Officer Bennett, who is trained in speed estimation, credibly contradicted this.  The court finds that Officer Bennett's testimony should be credited regarding his ability to pace Petitioner's speed, the results of that pacing, and the reason for his stop of Petitioner.

In the end, Petitioner's attorney did not provide ineffective assistance of counsel by not filing a motion to suppress.  Given Bennett's testimony, it is unlikely that any such motion would have succeeded; and it was an appropriate strategic decision to pursue a plea bargain instead.  Further, even if the motion had been filed, there was no reasonable chance of success based on the testimony at the evidentiary hearing.  Therefore, Petitioner cannot establish either the error or the prejudice sufficient to show ineffective assistance of counsel.  This claim should be denied.

### Claim Five

Petitioner's next claim is that his attorney failed to secure his release on bond and that, once Petitioner was detained without bond, counsel unreasonably failed to appeal the detention decision.  He maintains that the detention gave the government an unfair tactical advantage in plea bargaining.

Petitioner's detention hearing was held before the undersigned on July 8, 2002.  The next day an order of detention pending trial was entered based on a finding that Petitioner was presumed to be a danger to the community due to the

nature of his charge and that he had not rebutted that presumption. The undersigned also noted that Petitioner had multiple state court probationary sentences which had been activated, had instances of failing to appear in the state courts, had possessed two false drivers licenses, and maintained at least two vehicles in other person's names; therefore, he was also a risk of flight (docket no. 8).

Petitioner has not, in support of his 2255 motion, proffered evidence that his attorney could have used to overcome the presumption of detention or to launch a successful appeal of the detention order. His claim is far too conclusory to proceed and should be denied on that basis.

## Claim Six

Petitioner's sixth claim states that counsel failed to move to suppress the firearm "as requested by the defendant, in that movant had affirmatively described the elements for which this offense is predicated upon, that reaps deprivation of constitution principles that forbids prosecution to be brought forth as a result of 'racial profilings' and 'selective prosecutions'" [sic] (docket no. 144, attach). The claim is difficult to decipher, but argument in support of it appears to indicate that Petitioner is claiming that racial profiling and selective prosecution, not speeding, were the real reasons for the initial traffic stop in the case.

As already set out, Officer Bennett credibly testified at the evidentiary hearing that speeding was the reason for the stop and that, according to his pacing,

Petitioner was speeding. Petitioner has not shown that the stop was motivated by his race or that he was selectively prosecuted based on an unconstitutional reason.[3] Again, this claim is conclusory; and Petitioner has not produced evidence sufficient to support his 2255 motion and overcome Officer Bennett's testimony.

## Claim Seven

Petitioner's seventh claim is a convoluted statutory argument by which he concludes that the sentencing judge did not have the ability to impose a fine in this case. This claim is frivolous. The basis for the fine is thoroughly set out in the record and in the Fourth Circuit's denial of Petitioner's second appeal of that fine (docket no. 137). This claim should be denied.

## Claim Eight

Petitioner's eighth claim is that he received ineffective assistance of counsel because his attorney did not properly advise him regarding the requirement that he "knowingly" possess the firearm in the case. According to Petitioner, the gun that was found by Officer Bennett in his car did not belong to him, but was actually owned by his sister. He had just dropped his sister off at her house prior to being stopped by Officer Bennett. Petitioner claims that he found the gun in the glove box of the car when he went to retrieve the registration for the officer. He maintains that his sister placed the gun there without his knowledge while he was giving her a ride.

---

[3] In fact, at times, Petitioner has claimed that Bennett told him he stopped him because he was a "big man" in town and a drug dealer. Although, if proved, this might call the reason for the stop into question, it is not tied to Petitioner's race.

Upon finding the gun, he claims to have removed the clip, cleared a round that was in the chamber, placed the gun on the dashboard, and notified Officer Bennett of its presence. Petitioner states that he explained these facts to his attorney, but that his attorney advised him to plead guilty anyway. He now claims that, had counsel properly explained the concept of "knowing possession" so that he understood that the government would have needed to show that he knew the gun was in the car, he would have gone to trial rather than plead guilty.

As already set out, Petitioner's contention that he would have gone to trial but for counsel's failure to properly advise him must be judged in light of whether there is a reasonable probability that but for counsel's allegedly deficient conduct, he would have gone to trial. This decision must have been rational under the circumstances and is dependent on the likely outcome of a trial.

This claim was addressed at some length during Petitioner's evidentiary hearing. Petitioner did affirmatively testify that he had just dropped his sister off prior to being stopped, that he did not know that the gun was in the glove compartment, that he did not see her put the gun in the glove compartment, and that he discovered it while looking for the vehicle registration. He then cleared the weapon and put it on the dashboard. According to Petitioner, Officer Bennett did not see the weapon when he first approached the car (docket no. 168 at 51-52); however, Petitioner informed him it was there when he asked about weapons. Petitioner also claims to

have told Officer Bennett that it was his sister's firearm and that he had just dropped her off (*id.* at 58).

Petitioner further testified that he told his attorney this, but that his attorney, after consulting with another attorney, decided that having Petitioner plead guilty and pursue a downward departure based on substantial assistance was a better strategy than filing a motion to suppress. His attorney feared a higher sentence and the loss of any chance at a plea bargain or substantial assistance if he filed the motion to suppress (*id.* at 23-25).

Petitioner's sister also testified. She stated that the firearm in the car was hers. She was at a friend's house on the night in question and her car would not start, so she called Petitioner to come and pick her up. As he stood outside the car talking to her friend and not looking in her direction, she gathered her things, including the gun, and placed them in his car. Out of "force of habit" she placed the gun in the glove box, but laid her purse in the seat. She then forgot to remove the gun from the glove box when Petitioner dropped her off at her house (*id.* at 63-64). She testified that she told Petitioner's attorney this before Petitioner pled guilty (*id.* at 66).

On cross examination, Petitioner's sister testified that the firearm involved was a 9 millimeter Beretta and that her brother was with her when she bought it in 2000 or 2001 (*id.*). She stated that she carried the gun for protection when she was out late, but did not have a concealed handgun permit. When asked if she violated the

law by concealing it in her glove compartment, she responded that she did not put the gun in the glove compartment when she was alone, but did keep it there when her 8-year-old daughter was in the car with her. Her daughter was not with her at the time Petitioner gave her a ride home (*id.* at 67). When asked why she put it in the glove box on that night, she stated that she didn't want to "leave it sitting on the seat and we weren't right there by the car" (*id.* at 68).

Petitioner's sister was also asked about the firearm itself. With great difficulty, she described the gun and how to load it. She testified that she had never fired the gun (*id.* at 68-70). She also testified that the gun cost about $600 to $700 and that she was employed through a staffing service at the time she bought the it (*id.* at 72). She claimed to have selected that particular gun for purchase because she "looked at it and liked it, and that's the one [she] wanted" (*id.).*

Finally, Officer Bennett also testified on this point. He stated that when he first stopped Petitioner, Petitioner got out of his car and was verbally belligerent, and he provided Officer Bennett with the fictitious license. Bennett had Petitioner get back into the car while he checked the license, but before doing so, he did a visual sweep of the car to check for any obvious weapons. None were present, including on the dashboard (*id.* at 98-99). When he returned to the car after checking the license, he then asked Petitioner about weapons and illegal drugs. Petitioner told him that he had a firearm and Bennett saw the gun on the dashboard where it had not been

before. He removed Petitioner from the car and secured the firearm, which he noted was "comparable to a military weapon" (*id.* at 100).

Looking at the situation from the viewpoint of Petitioner's attorney at the time he advised Petitioner to plead guilty, that strategic decision was not an error on his part. Petitioner testified that he told his attorney his version of events regarding the source of the firearm. Petitioner's sister also spoke with the attorney and claimed the weapon as hers. It is not clear whether the attorney spoke with Officer Bennett or to what extent he learned of Bennett's version of events through police reports or other documents. Nevertheless, the reality is that, in order to demonstrate that Petitioner did not "knowingly" possess the firearm prior to discovering it, rendering it harmless by clearing the chamber and magazine, and reporting its presence to Officer Bennett,[4] his attorney would have had to place Petitioner's sister on the witness stand. Petitioner's sister, as demonstrated by her brief testimony at the evidentiary hearing, was not a reliable or credible witness. She claimed, while working for a staffing service, to have bought a $600 to $700 military-style pistol all on her own simply because she liked the way it looked. She did admit, however, that Petitioner, who had a lengthy felony record but significant financial assets, was present when she bought the gun. She then claimed never to have fired the gun and had difficulty describing it and explaining how to load it. All of this could raise a

---

[4] The court assumes purely for the purposes of deciding Petitioner's motion that these actions alone would not have subjected him to criminal liability.

reasonable inference to a jury that Petitioner, not his sister, was the true owner of the firearm and that she simply completed the purchase for him because he could not obtain the gun due to his criminal record.

To make matters worse, Petitioner's sister gave no credible explanation of why she would have placed the gun in the glove compartment on the night of Petitioner's arrest.  She stated that she did it out of "force of habit" while she was putting her things into Petitioner's car and he was standing and talking to her friend; however, she later testified that her actual habit was to carry the gun in the open unless her daughter was in the car.  Her daughter was not there that night.  She then later explained that she put the gun in the car because she did not want to leave it on the seat when they were not right with the car.  Of course nothing in her testimony indicated that she and Petitioner were not within sight of the car while talking to her friend.  More important, she testified that she left her purse on the same seat where she allegedly was afraid to leave the gun.  Her story is simply not credible and would likely have appeared even worse at trial under an even more extensive cross-examination than was conducted at the evidentiary hearing.

The only apparent way for Petitioner's attorney to have bolstered the sister's testimony would have been to place Petitioner on the stand.  His lengthy felony record would have been exposed to the jury at that point.  More important, he would then have opened himself up, if convicted, to a sentencing increase for perjury and obstruction of justice.  And this on top of the fact that he would have already lost any

chance at a three-point sentencing reduction for acceptance of responsibility by going to trial. Adding to the difficulty is that Petitioner's testimony would have differed from Officer Bennett's regarding Petitioner's promptness in revealing the presence of the weapon. In the end, Petitioner would have been asking a jury to believe his sister's noncredible testimony and the testimony of a felon over the testimony of a police officer. This would not make winning at trial impossible, but it would have certainly been difficult.

Facing this prospect on the one hand, the attorney had a plea offer on the other. Petitioner's ultimate sentencing level was a level 16 with a criminal history category of VI under the USSG (PSR ¶¶ 18, 41). This resulted in a sentencing range of 46 to 57 months at Petitioner's original sentencing; however, five levels of that is attributable to Petitioner's post-plea actions in concealing assets, which resulted in the loss of his acceptance of responsibility and a two-level increase for obstruction. Had he not done this, his total offense level would have been 11 with a criminal history category of VI, resulting in a range of only 27-33 months of imprisonment. His attorney could not have known at the time of the plea that Petitioner would hide his assets. Furthermore, the plea offer also provided Petitioner the chance to work toward substantial assistance and lower his sentence further. The attempt was not successful; but, had it succeeded, the substantial assistance reduction coupled with the time Petitioner spent incarcerated prior to sentencing could well have resulted in very little additional time in prison.

Looking at the totality of the circumstances, the advice given by Petitioner's attorney that he should accept the plea offer and work toward substantial assistance instead of proceeding to trial was not an unreasonable strategic choice. To be sure, it did not fall outside the range of acceptable advice given by reasonable defense attorneys. In fact, Petitioner's attorney even consulted with another defense attorney prior to making the decision to advise Petitioner to plead guilty. He did not render ineffective assistance of counsel. Furthermore, due to these circumstances, Petitioner also cannot show that he was prejudiced by counsel's advice or any failure to fully explain the meaning of "knowing." He has not shown that a reasonable defendant in his position would have proceeded to trial with only shaky witnesses rather than accept a plea bargain that offered the potential of very little additional time in prison.[5] His eighth claim for relief should be denied.

## Claim Nine

Petitioner's ninth, and final, claim is composed of a lengthy series of accusations against the sentencing judge. Overall, it alleges that the sentencing judge improperly credited the testimony of government witnesses at sentencing, determined that Petitioner had concealed assets, assumed that Petitioner was guilty of further uncharged crimes, and then used all of this against him by denying a reduction for acceptance of responsibility, increasing Petitioner's sentencing range

---

[5] Again, the fact that his plea did not work out as hoped due to later events does not impact the reasonableness of his and his attorney's decisions at the time the plea was entered.

based on obstruction, sentencing Petitioner at the high end of the Guidelines range, and imposing a $25,000 fine. Petitioner believes that all of this was improper and that it was based on the fact that he was a black man with substantial assets.

This claim is too lengthy and rambling to allow for in depth or point-by-point analysis. Nevertheless, Petitioner's allegations have already been dealt with on appeal, are conclusory and unsupported, and/or are contradicted by the record. The transcripts from his sentencing hearings show that all of the sentencing judge's decisions were well-founded based on the evidence and the law. There is also no sign that Petitioner's race played any part in the sentence. This claim for relief should also be denied.

**IT IS THEREFORE RECOMMENDED** that Petitioner's motion to vacate, set aside or correct sentence (docket no. 144) be **DENIED** with prejudice, except that it be denied without prejudice to Petitioner filing a motion with the Court of Appeals for the Fourth Circuit to recall and reenter its mandate, and that Judgment be entered dismissing this action.

_Wallace Dixon_
WALLACE W. DIXON
United States Magistrate Judge

Durham, N.C.
March 16, 2011